**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-20725-CR-COOKE**

**UNITED STATES OF AMERICA,**

      Plaintiff,

vs.

**EDOARDO ORSONI,**
       Defendant,
-----------------------------------------/

**DEFENDANT EDOARDO ORSONI'S RESPONSE TO THE PRESENTENCE**
**INVESTIGATION REPORT AND REQUEST FOR A NON-CUSTODIAL SENTENCE**

      The defendant, Edoardo Orsoni, by and through his undersigned counsel, and pursuant to U.S.S.G. § 6A1.2-3, p.s., Fed. R. Crim. P. 32 (d), (e)(2) and (f), and the applicable Local Rules for the United States District Court for the Southern District of Florida, hereby respectfully submits the instant Response to the Presentence Investigation Report (PSR) and Request for a Non-Custodial Sentence, and in support thereof, states as follows:

**I. INTRODUCTION:**

      On August 25, 2020, Edoardo Orsoni, a first-time offender, pled guilty to Conspiracy, in violation of 18 USC § 371, specifically, to violate 18 USC § 1956(a) and 15 USC § 78dd-1. The PSR recommends an *advisory* guideline range of 37 to 46 months. Mr. Orsoni, through counsel, has made no objections to the PSR and he has not offered any Chapter Five downward departures for this Court to consider.

Mr. Orsoni is a Venezuelan citizen who obtained his law degree at the age of 23; and, shortly thereafter began a legal career within his government's oil and gas industry. By December 2007, at age 28, he attained the position of National Manager of Legal Affairs for Joint Ventures with Petroleos De Venezuela; and, by age 30 (in 2010), he was appointed General Counsel at Petrocedeño. During the time of the offense, 2012 to 2016, Mr. Orsoni, admittedly, was introduced into, and participated within, the corrupt and toxic government controlled Venezuelan oil and gas business. His responsibilities as General Counsel at Petrocedeño involved approving contracts and bribes on behalf of senior Venezuelan officials. By explanation and not excuse, this was the "culture" Mr. Orsoni entered, and advanced through, at a relatively young age. Indeed, "because of his role with contracts, Petrocedeño contractors approached the defendant to offer bribes and kickbacks to secure an improper advantage and for his assistance with obtaining contracts or receiving payment on contracts. In addition, the defendant received instructions from senior PDVSA officials to ensure that specific contractors were awarded contracts from Petrocedeño."[1]

In December 2017, Mr. Orsoni, then working as Citgo's Vice President of Legal Affairs in Houston, Texas, voluntarily resigned his position in the Venezuelan oil and gas industry. Although he later learned he was a target of this criminal investigation in the summer of 2019, Mr. Orsoni had previously and voluntarily commenced cooperating with the Government in December 2017. With that said, Mr. Orsoni's acceptance of responsibility, his expressions of sincere remorse for involving himself in this offense, and his cooperation with the Government, were all immediate. Counsel will have more to say about this at the sentencing hearing.

---

[1] Factual Proffer, signed by the parties May 23, 2020, page 2.

Today, Mr. Orsoni is 41 years old.  He has three daughters who live in Argentina (2) and Uruguay (1) and he continues to enjoy close relationships with them and contributes to their financial support.  He now lives and works in Miami.  Because of his cooperation and guilty plea in this case, he cannot return home to Venezuela to visit his mother and younger brother without jeopardizing his personal safety.[2]  Yet, the offense conduct in this case concluded more than four years ago. Among the many significant and relevant factors identified in this filing, we further request that the Court consider *Pepper v. United States*, 131 S. Ct. 1229 (2011), wherein the court addressed the importance of considering events that transpire between the criminal conduct and the sentence in the punishment decision.  We respectfully submit that a Non-Custodial sentence in this case is reasonable and supported by the many 18 USC § 3553 sentencing factors identified below. We further believe that the Government would agree it is extremely doubtful this Court will ever see Mr. Orsoni again as a defendant.

## II.  18 § 3553 FACTORS IN SUPPORT OF NON-CUSTODIAL SENTENCE:

**A. Nature and Circumstances of Offense:**

---

[2] In a related case, Leonardo Santilli, a contractor charged in the Southern District of Florida who "paid bribe and/or kickback payments to or for the benefit of the defendant in connection with the award of Petrocedeño contracts" was assassinated in Venezuela on September 1, 2020.  PSR, ¶ 19.

**1. Specific Case Facts:** The parties have signed a Factual Proffer that is consistent with The Offense Conduct section of the PSR that begins at paragraph 21 and continues to paragraph 30. As previously stated, the Offense Conduct ended in 2016; Edoardo Orsoni voluntarily resigned his position within the Venezuelan oil and gas business in December, 2017; and, he voluntarily began his cooperation with the Government at that time, long before he was notified in the summer of 2019 that he was a target of this investigation. Thus, his acceptance of responsibility, remorse, and cooperation with the government were all immediate, comprehensive, timely, and in good faith.

**2. Edoardo Orsoni's Substantial Assistance to the Government:** Consistent with Edoardo Orsoni's acceptance of responsibility, his guilty plea, and his profound remorse for his involvement in this offense, he has unquestionably provided the Government with extensive substantial assistance**.** It is our understanding that the government will be filing a timely and comprehensive 5K1 motion prior to sentencing. Notwithstanding the anticipated Government 5K1 motion, this Court may also consider Edoardo Orsoni's substantial assistance to the Government in fashioning a below-guideline sentence in his case. Post *Booker*, the Government conceded in *U.S. v. Fernandez*, 443 F. 3d 19, 33 (2nd Cir. 2006) and appellate courts have held, that the sentencing judge may consider a defendant's cooperation as one factor bearing on a proper sentence, even if the Government did not make a "departure" motion, *U.S. v. Barner*, 572 F. 3d 1239 (11th Cir. 2009). Therefore, this Court, under 18 USC § 3553, may apply any weight to Edoardo Orsoni's substantial assistance in determining a sentence consistent with the agreement between the parties.

In support of a below-guidelines sentence, this Court may also consider: *United States v. Knox*, 573 F. 3d 441 (7th Cir. 2009) (we agree with Davis that, as a general matter, a district court

may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 motion); *United States v. Fernandez*, 443 F. 19, 33 (2nd Cir. 2006) (reasoning that a district court should consider "the contention that a defendant made efforts to cooperate even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1"); *United States v. Doe*, 398 F. 3d 1254, 1260-61 (10th Cir. 2005) (concluding that "a defendant's assistance should be fully considered by the district court at sentencing even if that assistance is not presented to a court in the form of a § 5K1.1 motion"); *United States v, Murray*, 2005 WL 1200185 (S.D.N.Y. May 20, 2005 (unpub.) ("fact that defendant testified as witness for the government at time when he had nothing to gain provides support for his genuine contrition"); *United States v. Hubbard*, 369 F. Supp. 2d 146, 150 (D. Mass. 2005) (suggesting court can correct for government's bad faith not making motion under 3553(a)(2)(C); and *United States v. Khoury,* 62 F. 3d 1138 (9th Cir. 1995) (court may depart downward where government refuses to make § 5K1.1 motion because defendant went to trial although government initially offered to do so and where defendant's cooperation led to arrest of co-defendant).  In the case before this Court, the defendant, Edoardo Orsoni, respectfully suggests that his substantial assistance to the Government be fully considered in the Court's deliberations with respect to the appropriateness of a Non-Custodial sentence in his case.

**3. Extraordinary Efforts to Make Restitution:** Several courts have recognized that truly extraordinary efforts to make restitution may be a   permissible basis to vary downward from the *advisory* guideline range.  In  *United States v. Kim*, 364 F. 3d 1235 (11th Cir. 2004), the district court departed downward based on the defendants' efforts to pay their restitution obligation of $268,237.03 promptly.  The defendants tendered $50,000 on the day they pled guilty and paid the

remaining balance at sentencing. Although troubled by the post-indictment timing of the payments, the Eleventh Circuit nevertheless overruled the government's challenge and affirmed the sentences, explaining:

> We agree with the Government that the timing of Appellees' payment - specifically, their failure to pay restitution before criminal indictment, and only pursuant to a negotiated plea agreement - cuts against the voluntariness of their act and militates against granting a downward departure. However, we see no need to draw a bright line rule that limits departures based on extraordinary restitution to those defendants who paid restitution before indictment and not pursuant to a plea agreement.

*Id.* At 1245.

Pursuant to the written Plea Agreement, Mr. Orsoni agreed to the entry of a personal money judgement in the amount of $4.5 million and to the forfeiture of two (2) real properties in Miami. He has since completely satisfied his forfeiture obligations related to this money judgement by cooperating and assisting the government, as required in paragraphs 11 through 15 of the written Plea Agreement. Therefore, no financial sanctions are outstanding and no further order by this Court is necessary.[3] We believe these timely and extraordinary efforts to satisfy his financial

---

[3] The Office of Inspector General of the United States Department of Justice (OIG) has published a Review of the Debt Collection of the United States Attorneys' Offices, which found there was $101.5 billion in outstanding criminal debt FYE 2014, and that only approximately 8% of criminal debt is collectable. https://oig.justice.gov/reports/2015/el506.pdf. A more recent OIG

restitution/ forfeiture obligations further support the imposition of a Non-Custodial sentence in Mr. Orsoni's case.

### B. History and Characteristics of Defendant:

**1. Edoardo Orsoni's Personal and Family History**: Edoardo Orsoni is a 41 year old native of Venezuela who has lived and worked in the United States since June 2016 and has a valid VISA until February 2021.  He is the son of Jose and Teresa Orsoni, the brother of Gustavo and Humberto Orsoni, and the father of three daughters, ages 9, 12 and 15.

Mr. Orsoni was born and raised in Lecheria, Venezuela.  This small city is located along the country's northern coast, about a six hour drive east of Caracas.  The Orsoni family is well known locally and they have lived and worked in the area for several generations.  Mr. Orsoni's maternal grandparents are Italian, and he holds both Venezuelan and Italian citizenship.  Both his parents and his brothers are attorneys.  The family also owns about 800 hectares of land where they raise cattle and pursue agriculture.

---

report is not available.  However, because Edoardo Orsoni has fulfilled all the financial sanctions in his case, his case will be among the 8% collected, and the Government will not be required to pursue further litigation to obtain restitution.

Mr. Orsoni described his formative years as normal without incident. He enjoyed above average economic conditions, and his parents emphasized the importance of education and religion. The children attended private schools and the family attended Catholic church regularly.[4]

After high school, Mr. Orsoni attended the Santa Maria University in Anzoategui, Venezuela, for five years and earned a law degree in 2002, at the age of 23. During his final year at the University, Mr. Orsoni was employed in the security department of Petrozuata, a well-known Venezuelan Government controlled oil and gas company. Once he earned his law degree, he moved to the company's legal department and remained there until May 2007. During those years, he studied English in Brighton, England, received a diploma in Modern Economics and International Business in Caracas, and attended a program on Global Legal Systems and Oil and Gas Contracts in London. He did not leave the family home until he married Ninesky Fierro in December 2006.

Between June 2007 and March 2015, Mr. Orsoni held the position of General Counsel for several other Venezuelan Government controlled oil and gas companies. In 2015, he moved his family to Caracas and took the position of Corporate General Counsel for PDVSA. At that point, he had a wife and three daughters and was then 35 years old.

In June 2016, Mr. Orsoni was appointed Vice President of Legal Affairs for CITGO (a PDVSA controlled affiliate), and he moved his family to Houston, Texas. He resigned this

---

[4] Mr. Orsoni continues to attend Catholic church regularly. He is currently a regular parishioner at St. Boniface in Pembroke Pines. He has also been doing volunteer work at St. Jerome Elementary School in Fort Lauderdale.

position, which paid him $240,000 annually, in December 2017, because CITGO executives were being threatened with arrest and prosecution for vindictive and fraudulent reasons in Venezuela by the Venezuelan government and its military. He took a position with an oil and gas related company in Houston, Petrochem, which paid him approximately $6,000 a month. He and his wife separated and divorced in 2019. When he learned he was a target in 2019, his cooperation with the Government accelerated, thus forcing him to resign his position at Petrochem. He drove for Uber and Lyft for a few months until he moved to South Florida in early 2020. He now works as a sales representative for Northeast Engineering and Chemicals and lives in Hollywood, FL, in an apartment owned by the company. He volunteers about 5 to 10 hours a week at St. Jerome's Catholic School, he attends church every week, and he hopes to see his mother and his daughters this Christmas.

**2. Edoardo Orsoni's Extraordinary Family Ties and Responsibilities:** Mr. Orsoni's ex-wife, Ninesky Orsoni, is a native of Uruguay and now lives in Montevideo, Uruguay, with their two daughters, Estefania, age 9, and Maria, age 12. Maria was born with an obstruction by her left kidney that caused her to be hospitalized more than a dozen times when she was younger. Unfortunately, she is still prone to serious infections and must take antibiotics regularly. She also must see and consult with a juvenile nephrologist at least twice a year to monitor her health. Mr. Orsoni pays $500.00 a month child support. He has not seen his daughters since they left Houston in late 2019; however, a long awaited visit this Christmas is planned. Until then, he continues to Face Time with his daughters every evening. He also has a 15 year old daughter, Camilla, from Yosmar Vazquez, and mother and daughter now live in Buenos Aires, Argentina. Mr. Orsoni Face Times with Camilla every week and she last spent a month with him in February 2020. Mr. Orsoni

currently pays $600.00 child support. Ninesky Orsoni has written this court that Mr. Orsoni is a wonderful father, he has always paid child support, and his continued emotional and financial assistance is very much needed for the care of his minor children.

Effective October 27, 2003, the Sentencing Commission amended § 5H1.6 to limit the availability of departures for family ties and responsibilities. The new application note, § 5H1.6, comment. (n.1(A)(i)-(iii), instructs the court to consider the seriousness of the offense, the defendant's involvement in that offense, and the members of the defendant's family. Further, comment. (n.1(B)(i)-(iv) requires the court to consider if "the defendant's service of a sentence within the guideline range will cause a substantial loss of essential care-taking or essential financial support to his family," that "the loss of care-taking or financial support exceeds the harm ordinarily incident to incarceration for a similarly situated defendant," that "the loss of care-taking or financial support is one in which no effective remedial or ameliorative programs reasonably are available," and that "the departure will effectively address the loss of care-taking or financial support." Notwithstanding this pre *Booker* amendment, Edoardo Orsoni asks this Court to consider his family ties and responsibilities as a § 3553 sentencing factor in fashioning a Non-Custodial sentence in his case.

**3. Edoardo Orsoni's History of Faith and Volunteer Work**: As a boy in Venezuela, Mr. Orsoni attended Catholic church regularly with his parents and siblings. This is something he continued to do as an adult, and he has passed this religious faith to his daughters. However, church for Mr. Orsoni was never limited to "just being there" on Sundays. Mr. Orsoni has always been involved with, and given of his time, to his church. He brought this practice with him to Texas where for more than a year he volunteered at the Holy Ghost Catholic Church in Houston.

When he came to Miami in March 2020, he learned through his friend, Rosanna Ramos, who teaches at St. Jerome Catholic School in Ft. Lauderdale, that the school was in desperate need of a volunteer handyman at the school. Since then, Mr. Orsoni has voluntarily utilized the handyman skills he learned from his father on the farm. He typically spends 5 to 10 hours a week volunteering his time as a painter, carpenter, electrician, plumber, or whatever is needed. Over the years, Mr. Orsoni's charity was never about simply opening up his checkbook. Rather it has always been about his faith, and meaningfully giving both his time and labor to make a difference.

The Honorable Jed Rakoff, United States District Judge for the Southern District of New York, in *United States v. Adelson*, 441 F. Supp 506,511 (SDNY 2006), explained the importance of a defendant's good works and the support of his community that he receives at sentencing. The court reflected on letters from people "from all walks of life," attesting to Adelson's good works and deep humanity. Writers described his "generosity of spirit and his ever-present willingness to go above and beyond the call of duty to help others." 441 F. Supp. 2d 513. The court further referred to the numerous colleagues, professionals and public officials who wrote to the court to express their admiration for the defendant. *Id.* As the court further explained:

> "But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. The elementary principle of weighing the good with the bad, which is basic to all great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a

11

necessary sentencing factor, "the history and characteristics of the defendant."

In sum, Edoardo Orsoni believes his history of volunteer work and service to the community may be considered by this Court in fashioning a Non-Custodial sentence in his case.

**4. Letters From Family, Friends, And Business Associates:** The defendant has obtained a series of letters from family members, friends, and former business associates for the Court's consideration at sentencing. These letters are from those who know him well, and truly represent the defendant's character and personal history. Taken together, these letters demonstrate that the defendant is deeply remorseful, extremely unlikely to recidivate, and fully accepts responsibility for his actions. In addition, these letters further support defendant's good faith request for a non-custodial sentence. Accordingly, the defendant requests that the Court review and consider the letters in determining the appropriate sentence.

**C.  Additional Sentencing Factors:**

**1. Edoardo Orsoni's Status as a Removable Convicted Felon:** Pursuant to Paragraph 20 of the written Plea Agreement and as noted in Paragraph 14 of the PSR, Mr. Orsoni recognizes that, as a non-citizen, he has pled guilty and will be sentenced for removable offenses. "Indeed, because the defendant is pleading guilty to conspiracy to commit money laundering, removal is presumptively mandatory." However, the parties have also agreed that "after the defendant has been sentenced and served any term of imprisonment imposed as a part of his sentence, the Offices will not object to a law enforcement agency (LEA) submitting an application requesting an S visa for the defendant." Although Mr. Orsoni understands there is no guarantee he will be granted S non-immigration status, he believes he has done everything to fulfill his obligations to the

government, including his extraordinary and continuing cooperation and completely satisfying all of his financial obligations, as referenced in paragraphs 10 and 11 of the written Plea Agreement.

Notwithstanding the above language that the government's filing of the S visa application would begin after sentencing and any term of incarceration imposed by this Court, we respectfully submit that a term of incarceration is not needed in Mr. Orsoni's case. First, as a removable alien at the time of his BOP designation, Mr. Orsoni would not be eligible for designation to a minimum security camp, and he would likely be designated to a BOP privately contracted facility for removable offenders. The closest location to Mr. Orsoni's family is in Northern Florida, just south of the Georgia border. As a result, visits from family members in South America may be few and far between during any period of incarceration imposed on Mr. Orsoni. Further, his immigration status would not allow him to benefit from an early release to a community corrections facility (see 18 USC § 3624). In short, any term of incarceration would impose special restrictions on Mr. Orsoni because of his immigration status.

As noted above, the process of obtaining an S visa for Mr. Orsoni would not begin until he has been sentenced in this case. If the Court imposes a non-custodial sentence, the government can immediately commence its efforts to secure an S visa for Mr. Orsoni who urgently needs that coveted status. Absent such a visa, Mr. Orsoni would be deported to Venezuela where he would be in life-threatening danger as a result of his cooperation with U.S. authorities. Under the circumstances, we do not believe any term of incarceration is needed in Mr. Orsoni's case.

In addition, we believe Mr. Orsoni has more than satisfied his obligations to the government. Since moving to Miami in early 2020, he has continued his extraordinary cooperation with the government that began in Houston in 2017. He has been with the same employer since

moving to Miami, he has a permanent residence, and he has continued to do volunteer work. His employment allows him to provide financial assistance to his children, and provide them with a home when they come to visit him on the holidays. Mr. Orsoni is clearly not a risk to recidivate, nor is he a flight risk. Accordingly, we believe Mr. Orsoni has demonstrated that he is an excellent candidate for a Non-Custodial sentence.

**2. COVID-19 within the BOP:** This filing is submitted in the midst of a Pandemic that this country has not seen in a hundred years. According to our recent review of the BOP website, there are 4,159 inmates and 1.339 staff members with active COVID-19; and an additional 19,563 inmates and 1,824 staff members have recovered. Another 145 inmates have died of COVID-19. And, after the BOP began to prioritize home confinement as an appropriate response to COVID-19, the BOP has released 7,784 inmates to home confinement. We believe the dangerous pandemic related health conditions within the BOP and the ongoing nationwide surge of new cases are further reasons for the Court to impose a Non-Custodial sentence in Mr. Orsoni's case.

### Conclusion

Based upon the facts and circumstances set forth in this Memorandum, Edoardo Orsoni, through counsel, respectfully requests that the Court impose a non-custodial sentence below the *advisory* guideline range, particularly after considering the following applicable 18 USC § 3553 factors:

- Immediate, substantial and continuing cooperation with the Government.
- Consequences of the nature of his cooperation on both his safety and immigration status.
- All financial restitution and/or forfeiture obligations have been satisfied in this case.
- Extraordinary family ties and responsibilities.

• History of volunteer work.

• Low risk to recidivate and strong elements of deterrence.

WHEREFORE, the defendant, Edoardo Orsoni, respectfully requests that the Court consider this Response To The Presentence Investigation Report and Request for a Non-Custodial Sentence in fashioning an appropriate sentence under the circumstances.

Dated:  January 28, 2021               Respectfully Submitted,

                                       s/*Robert I. Targ*
                                       Robert I. Targ (Fla Bar No. 272299)
                                       Attorney E-mail Address: rtarg@diazreus.com
                                       Michael Diaz, Jr. (Fla Bar No. 606774
                                       Attorney E-mail Address: mdiaz@diazreus.com
                                       DIAZ REUS & TARG, LLP
                                       100 Southeast Second Street, Suite 3400
                                       Miami, Florida 33131
                                       Telephone: (305) 375-9220
                                       Facsimile: (305) 375-8050

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of January 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Robert I. Targ*

**SERVICE LIST**

U.S. Attorneys Office
99 N.E. 4th Street
Miami, FL 33132